Good morning, your honors, and may it please the court. My name is Stobster. I'm a certified law student at LMU Loyola Law School. I'm supervised by Nancy Olson and Jeffrey Kilman, who are here in attendance today. I'm also joined at council table by Paul Choi, and we're appearing on behalf of Appellant David Earl Ray Gallegos. I'll be addressing the material factual disputes at issue regarding Gallegos' Eighth Amendment claim, and Mr. Choi will be discussing the procedural issues. We would like to speak five minutes on the first issue, two minutes on the second, and would like to reserve three minutes for rebuttal. Okay, thank you. Watch your clock. This case is about prison officials who deliberately disregarded, who were deliberately indifferent to Gallegos' physical mental health crisis and his repeated explicit pleas for help. Here, Gallegos suffers from schizoaffective disorder, a chronic mental illness that causes him to experience both auditory hallucinations and delusions. As his symptoms worsened, he was transferred to defendant's care within the close observation area of the prison, where specifically seriously mentally ill inmates are housed. Just days before the self-harm incident, as defendant Maxson indicates in his own incident report, Gallegos told him that voices were telling him to insert items into his anus and other actions that he felt were prison rape related. On the day Gallegos committed the self-harm, defendants again dismissed Gallegos' safety concerns, and he became even more agitated, yelling, and acting erratically. Can I jump to a question that I have, which is, when is the period of time where you think that defendants committed the constitutional violation? The deliberate indifference came on the December 6th incident. But where in the timeline of that incident? Like, after they sent him to his cell, while he was waiting for Richards, when in the timeline? Taking what's in the record, it was that deliberate indifference to the visible escalation of the mental health crisis in their office, and then their actions, or rather inactions, were to send him into a cell alone, where he eventually self-harmed, where that risk then materialized. So when they sent him to his cell alone, they also summoned Richards to go to the cell? Is that correct? They told Richards, Richards did appear in Gallegos' cell, however, what we argue in the briefs is that if the defendants were to tell Richards about their ongoing interactions and the constant repeated pleas by Gallegos about his safety and health concerns, coupled with the mental health crisis episode they saw in their office, Richards should have not left Gallegos alone. But Richards isn't a defendant.  Right. And so... So is the claim that, in order for these defendants to be liable, are you saying that the deliberate indifference was that even though they summoned Richards, they didn't provide Richards the information she needed to deal with the incident adequately? Well, no, Your Honor, because in a sense, you're right in that we focus on the defendants here and what actions or inactions that they took. There are factual disputes here as to what they said or what they did, but the record does indicate that the defendants were not there with Gallegos. But so is your theory that the defendants themselves had to go to the cell? They couldn't send someone else like Richards? Well, as the record shows, they sent Gallegos into a cell alone and they didn't do... I mean, yes, it's possible and it is that they told Richards, but this is something that a jury could reasonably and should be able to decide on whether that was appropriate in light of the circumstances that Gallegos was showing them and as per the Eighth Amendment claim, which looks at the subjective knowledge of the defendants. And here, Defendant Maxson, in that incident report on the day of the event, had that knowledge in the back of his head and he states so that he realized Gallegos had told him only days before that these voices were telling him to do things and that he was fearing for his safety.  But for a deliberate indifference claim, you need to show not just that they did the wrong thing, but that it's a higher standard than sort of ordinary malpractice. So, what is there even taking all the facts in light most favorable to your client that would have alerted these defendants that sending the counselor to go check on somebody who was exhibiting signs of a mental health crisis was not a totally reasonable and adequate response to the problem? Well, to answer your question, Your Honor, there are three factual disputes of which we think reasonable inferences can be made and I realize I'm at 30 seconds, so I'm happy to answer questions. Answer the question and then we'll go to your colleague. And so, again, it's page 58 of the record where Maxson's own incident report, he recognized Gallegos had told him about this risk of harm and then page 59 of the record where the incident report shows this escalated behavior and the subjective knowledge of the prison medical files on page 60 that ultimately got them into, Gallegos, into their care to begin with. All of that goes into their subjective knowledge from which a reasonable jury should be able to decide this. Let's hear from your colleague. Thank you. Thank you. Good morning, Your Honors, may it please the Court, Paul Choi for the Plaintiff, Mr. Gallegos. Mr. Gallegos did not receive fair notice of the grounds for his dismissal of his claim because the District Court did not properly follow federal rule of civil procedure 56F. A pro se incarcerated litigant cannot be expected to anticipate or preemptively oppose our arguments that the adverse party does not make. And when you put the District Court's order side by side with the defendant's motion for summary judgment, it illustrates the problem. Specifically, the District Court's order did not contain the grounds that were raised in the defendant's motion. It couldn't because the defendant's order was facially deficient. In particular, the defendant's motion argued about verbal harassment and framed everything in terms of verbal harassment, which is decidedly not the issue in this case. Even after the magistrate judge explained verbal harassment was not the issue in this case, the defendants continued to press it in their objections to the report and recommendation. Can I ask you why? I mean, suppose we agree with you that the District Court, you know, did this improperly. Why does it matter? I mean, so we just heard your colleague's argument that, you know, summary judgment was wrong on the merits, and if we agree with that, then you win, and this doesn't matter. And if we don't agree with that, you know, is there something else that, you know, you would be able to say that you're not currently able to say? What is the prejudice from this? Of course, Your Honor. Mr. Gallegos consistently, as per say would again, was navigating the process without counsel, and he – there's evidence in the record that indicates he was rather confused as to what exactly was happening throughout the process. I can point you to a specific point in the record. But, sorry, can I just follow up on this question? We are reviewing summary judgment de novo, so unless there's something else that your client would have put into the record or something that we don't have at this point, we're not looking at what the District Court did anyway. We're looking at the record and deciding whether summary judgment is appropriate. So maybe add that to the question and see if you can point us to something that would have been different at this point. Of course. I realize I'm running low on time, but I'll finish this question. So Mr. Gallegos, his claim is that the prison officials were deliberately indifferent to his needs. However, because all of the – all of the papers by defendant were framing the issue in terms of verbal harassment, he wasn't responding and wasn't able to provide like the correct counterarguments and like objections and – to the correct claim, as per say would again. For example, he could have demanded the entire deposition come in, had he been aware. Additionally, you can – we can see – Does he have the whole deposition transcript? I believe he does, Your Honor. But as per say would again, he wouldn't have been aware that he could demand the entire thing come in. And would that have made a difference, having that additional – I mean, would that have made a difference in terms of the record that we're reviewing that would have been a different record? Yes, Your Honor, because we're not allowed to speak onto like the omitted pages right now because it's not in the current record. Then the full deposition, whatever it may include, could potentially have more evidence to support Gallego's actual claim as opposed to the verbal harassment claim. And I'd like to quickly point you also to his – to – in the electronic record at 56 – or sorry, the excerpt of the record at 56, Gallego's in motion for opposing summary judgment. He continues to frame the issue like in response to defendants as deliberate indifference that caused distress as opposed to like deliberate indifference in a sense that he wasn't receiving the care he needed. Like he's framing things in the defendant's language, even though the defendant's language is not the correct claim. I'd like to reserve the rest of my time for rebuttal if I could. Thank you. Thank you. Good morning, Your Honors. I'm Julie Turley for the State Defendants. The trial court properly granted summary judgment to the State Defendants because Gallego's failed to offer sufficient evidence to satisfy the high legal standard of deliberate indifference to an Eighth Amendment violation. Below, both sides submitted evidence on the State Defendants' summary judgment motion, and the trial court therefore correctly considered the motion under Rule 56 as a summary judgment motion and found that there was not sufficient evidence on the record for a reasonable trier of fact to return a verdict on Gallego's claim. On appeal, Gallego's attempts to create genuine issues of material fact through speculation of subjective intent, but that is not the standard here. And as the moving party, he was required to submit evidence in response to the defendant's motion to defeat summary judgment of that subjective intent. He was required to offer sufficient probative evidence tending to support his complaint. He failed to do so, and therefore this court should affirm. Do you concede that there was a bit of a mismatch between the original motion for summary judgment filed by your client, which focused on verbal harassment, and the claim that we seem to be looking at now, which focuses on deliberate indifference to a medical or a mental health emergency? It was not the most artful motion, Your Honor, but the key piece here is that once the parties submitted evidence on both sides, the court was required to treat it as a summary judgment motion. Each side briefed the standard for summary judgment. The magistrate judge, as well as the district court judge, submitted rulings reflecting the summary judgment standard. And at that point, and at this level of review, it is de novo, as Your Honor pointed out. It is sort of odd, though. I actually am appreciating this argument more than I had from the papers, because if the defense was moving for summary judgment on a theory that then the plaintiff was responding to with certain pieces of the evidence, and now defense is saying you don't have evidence of some other kind of claim, I'm not quite sure that the plaintiff had the opportunity to put in whatever parts of the deposition testimony or other sworn evidence he might have put in to counter the actual argument that's being made now. Importantly, Your Honor, the question earlier goes to the first element of deliberate indifference, which would be the subjective prong. What was the risk of harm? Actually, it's the objective, right? I'm sorry. Yes. Thank you. The objective prong. What was the substantial risk of harm presented to, that was the substantial risk of harm to the defendant? On the trial court's order, it was focused on the subjective prong, and that there was no evidence of that, of the state defendant's subjective awareness. You concede at this point that the officers were responding to a mental health crisis, because I do think that there's some aspects of the record that are unclear. I'm not sure that that particular aspect is unclear. The officers... They are summoning psychiatric and psychological help in the moment very quickly, so that may impact the claim, but it does seem like that they seem to be thinking of this as a mental health emergency. Correct, Your Honor, but again, I would say that that goes back to confusion over what is the risk at issue here, but that isn't the issue or the arguments to this court. The issue is whether there was evidence of subjective intent, which is the second prong, and the evidence that Gallegos points to are speculation of subjective intent, not anything approaching the level of generalized awareness as outlined by Farmer about what you could infer from the general context of the case. If there were... So I know there was this, okay, there's this deposition transcript argument. It seems like you have a good point that he had the transcript, but he needed to put in the relevant parts of the transcript. So would there have been a later opportunity for him to do that once the arguments kind of shifted? I believe that he could have submitted that in response to the objections to the report and recommendation, Your Honor. But even... But what about the report and recommendation would have tipped him off to that issue specifically? Because the magistrate judge says, wait a minute, you're just talking about verbal harassment. This looks like a motion to dismiss that I've already dealt with. There's sort of a partial record problem. So maybe the partial record problem tips him off to submitting the full record, but in terms of the merits of what everyone is arguing about, how would Gallegos have known that this is not about verbal harassment and whether he's proved that? Well, again, going back to what the deposition transcript actually contains, that still would not have substantiated evidence of the subjective intent prong. So even if he had submitted the entire deposition or more of it, it would not have backfilled that issue in the record. But you're only able to tell us that as an officer of the court, I guess, because you've probably seen the whole thing? No, Your Honor. Just being his own deposition, his own testimony would not have been able to backfill subjective intent of the state defendant's actual awareness. And the record actually demonstrates the very opposite of deliberate indifference. And Gallegos, this morning, continues to argue, in essence, that the state defendants didn't do enough or they didn't take the appropriate steps. But that isn't the standard of deliberate indifference. That's a negligence cause of action, not deliberate indifference. And as Your Honors have recited this morning, the state defendants took multiple actions after Gallegos appeared in Maxson's office on December 6th. He was agitated that the wrong, as he perceived, the wrong individual was receiving his kites. He never stated in that office that he was going to harm himself. He was concerned about his safety as to the previously reported PREA violation about voices in his head, not a stated concern that he was going to harm himself. Gallegos was combative. He acknowledges that he, quote, flipped out. And so they sent him to his cell because of that behavior. And they summoned a mental health counselor. But Gallegos sent her away. It was only at that point that he attempted to harm himself. And immediately there- Is that clear from the record that he, I mean, I guess I'm just curious, what is the page of the record that you cite too that makes it clear that the self-harm was after Richard was there? That would be in the state defendant's incident reports primarily, Your Honor. I believe that's 59 to 60, 58, around that location. And after he did attempt to harm himself, a nurse examined him and then they stationed a guard outside of his door to ensure his safety. So wanting the state defendants to do more in that situation is not evidence of deliberate indifference. Is there evidence in the record that Richards should have been able to handle a mental health emergency without having been given context? If we assume their argument that there wasn't adequate communication because that's not shown, should she have been able to handle this? What do we know about her qualifications? Richards is no longer a party in this case. Her claim was dismissed and that's not an issue on appeal. But part of the theory is the defendants should have done more than send her. So what do we know about how reasonable it was to just send her? Well, we know she was a mental health counselor. I don't believe the record contains information on anything other than that. And the context of where this inmate was housed would also go to that aspect of the case. But the defendants qualify her as a mental health counselor, I believe, in their record. And that particular issue or qualifications has not been raised. Is the fact or question, I guess, of whether the self-harm occurred either before Richards got there or when she was there or after she had kind of stepped away, is what I understood, does that matter? Or do you perceive his claim as really being that the whole violation was actually complete earlier because they, in his view, ignored him and sent him away? And yes, Your Honor, I agree with that assessment, that the argument seems to be that the constitutional violation occurred before he attempted to harm himself and that Silva's summoning of the mental health counselor does go to the question of deliberate indifference of what actions he took, that he responded appropriately. And your view is because the officers didn't simply disregard him, they actually took action and even if that action proved unsuccessful or not perfect, it was still reasonable. Correct, Your Honor. And I see I am running out of time. So unless the court has any further questions, the State Defendants ask that this court affirm summary judgment. Thank you. Thank you, Your Honors. I'd like to address two quick points that both kind of share a common theme of the full context of the situation. First of all, in regards to what happened with Richards, it's unclear what Silva told Richards. And there's a difference between telling Richards like, oh, can you go deal with him? He's on one versus saying, hey, he's like in a bad spot right now. He's like got mental health problems, like he has a history of mental health. You should go really make sure that he's being taken care of. Those are two completely different situations and we don't know which one happened. And if we make the reasonable inference in favor of Mr. Gallegos, then he then that is enough to go to a jury. And similarly, on the subjective intent issue, there is. And just to rephrase on that. So your view of that is that her that at least maybe Silva's failure to fully brief Richard or not even knowing what he said is goes to which element to the unreasonableness of his actions? Correct. Correct. Your correct. Your Honor. And also it's like what actually he said is would be a factual dispute. And Gallegos would also be able to submit a declaration as to as further evidence supporting his claim on the open indifference. Should this be remanded? He could submit a declaration as to what Maxon told Richards as to his perception of what happened in the office and as to other other matters as well. But like, but we don't know what happened when we don't know exactly what Silva told Richards. And that's unclear in the record. But there's no evidence against or for it. I'm just I'm trying to understand, is it your position that the violation of deliberate indifference was complete at them? When was it complete? I'm wondering if you think it's complete when Gallegos is made to walk back to his cell alone. It was complete when, of course, it was complete when he was sent back to his cell alone. And and the timeline is unclear there, but like how long was he actually left alone? You might have noticed that in the answer in brief, there were a lot of words like immediate prompt and quick. But those are all factual questions. So in Lemire is one case, but there are others also that explain that when plaintiffs allege deliberate indifference, they have to demonstrate that the defense and defendant's actions were both the actual and proximate cause of the injuries. So if your theory is just the walking back, but as I understand it, the self-harm happened after Richards was there. Why doesn't that interfere with proximate cause like Richards becomes the proximate cause, her inability to fix the situation rather than just this time that isn't when the harm happened? Well, it's unclear if Richards was there when he self-harmed. The record indicates that she left at some point. Well, even if she was there, it's still her fault for not handling it rather than this time where he's by himself, where he didn't harm himself. I would say the connection back to defendants would be like, what was Richards informed? How did like what did Max and Silva tell Richards and what happened? Did they tell her what happened in the office that they tell her that, oh, it's just another inmate having a- And that's because you're framing this as what Richards did or didn't do is all part of how the two officers responded to the situation from the get-go. Yes, Your Honor. Okay. That's correct. We have you over your time. So if there are no further questions, we'd like to request that this be remanded for trial on the genuine disputes of material fact, but in the alternative, remanded for further proceedings consistent with the correct summary judgment standards. Thank you both sides for the helpful arguments and thank you to the students for taking this pro bono. We really appreciate your help. It's excellent work and very helpful to the court. The next case on calendar.
judges: FRIEDLAND, MILLER, Traum